**AMERICAN HOME ASSURANCE COMPANY, a New York corporation, Plaintiff,**

v.

**WEAVER AGGREGATE TRANSPORT, INC., a Florida corporation, Beacon Industrial Staffing, Inc., a Michigan corporation, Defendants.**

Weaver Aggregate Transport, Inc., a Florida corporation, Crossclaim Plaintiff,

v.

Beacon Industrial Staffing, Inc., a Michigan corporation, Crossclaim Defendant.

Weaver Aggregate Transport, Inc., a Florida corporation, Third Party Plaintiff,

v.

Salvatore Manzo, and Salcor Properties, Inc., Michigan corporation d/b/a S & M Management, Inc., Third–Party Defendants.

**Case No. 5:10–cv–329–Oc–10PRL.**

United States District Court, M.D. Florida, Ocala Division.

Dec. 26, 2013.

Aaron S. Weiss, Steven J. Brodie, Thomas Meeks, Carlton Fields Jorden Burt, PA, Miami, FL, Alexander David Del Russo, Carlton Fields, PA, West Palm Beach, FL, for Plaintiff.

Bridgette Mannino Blitch, C. Robert Pickett, J.W. Taylor, Taylor & Associates, Attorneys at Law, PL, Winter Haven, FL, for Cross Claimant/Third Party Plaintiff/Defendant.

Claude M. Harden, III, Appel Harden Law Group, Lakeland, FL, for Defendants/Cross Defendant.

Hank B. Campbell, William Thompson McKinley, James C. Valenti, Lakeland, FL, Jonathan Stidham, Jeffrey Sullivan, Stidham & Stidham, PA, Bartow, FL, for Third Party Defendants.

### ORDER ON ALL PENDING DISPOSITIVE MOTIONS

HODGES, District Judge.

Plaintiff American Home Assurance ("American Home") issued two workers' compensation and employer liability insurance policies to Defendant Weaver Aggregate Transport, Inc. ("Weaver"). The workers covered by the policies were provided to and performed work for Weaver pursuant to a Client Services Agreement between Weaver and Defendant Beacon Industrial Staffing, Inc. ("Beacon"). American Home contends that Weaver and Beacon provided false information to American Home concerning the number of covered employees, the types of work the employees performed, and the geographical location of the employees; and, as a

result, American Home claims that Weaver and Beacon underpaid the premiums on the policies by over $400,000.

American Home has asserted seven state-law claims alleging, among other things, breach of contract, unjust enrichment, and fraudulent inducement against Weaver and Beacon seeking recovery of the unpaid premiums and damages (Doc. 47). Weaver has asserted seven cross-claims against Beacon and a seven-count third-party complaint against Salvatore Manzo and Salcor Properties, Inc. ("Salcor"), contending that Beacon, Manzo, and Salcor committed fraud upon Weaver, and are the parties who should ultimately be responsible for the unpaid insurance premiums (Doc. 143).

This Court has subject matter jurisdiction over the entire case pursuant to 28 U.S.C. § 1332, and there is no dispute that this Court has personal jurisdiction over all Parties.

The case is presently before the Court for consideration of multiple dispositive motions: (1) Defendant Weaver's Motion for Partial Summary Judgment as to Count 1 of American Home's Amended Complaint (Doc. 165); (2) Cross–Defendant Beacon's Motion to Dismiss (Doc. 144); (3) Cross–Defendant Beacon's Motion for Summary Judgment (Doc. 160); (4) Third–Party Defendant Salcor's Motion to Dismiss (Doc. 145); (5) Third–Party Defendant Salcor's Motion for Summary Judgment (Doc. 163); (6) Third–Party Defendant Manzo's Motion to Dismiss (Doc. 146); and (7) Third–Party Defendant Manzo's Motion for Summary Judgment (Doc. 167). Each of the motions has been responded to (Docs. 175, 149, 176, 150, 177, 151, 178), and they are ripe for disposition.[1] All of them will be Denied.

### Undisputed Material Facts

### I. The Parties

American Home is a New York corporation with its principal place of business located in New York City, New York. It is an insurer authorized to provide workers' compensation and employer liability insurance in Florida. Weaver is a Florida trucking corporation with its principal place of business located in Sumterville, Florida. Weaver is engaged in the business of transporting aggregate and other materials throughout Florida. At all times relevant to this case, Weaver operated solely in Florida.

Beacon is a professional employee staffing organization which leased employees and provided various payroll and human resources services to its clients, including Weaver. Beacon is incorporated and has its principal place of business in Michigan. Beacon primarily leased employees to trucking companies operating in Michigan, Indiana, and Illinois. It was not licensed to lease employees in Florida. Beacon ceased all business operations at the end of 2008, but has not yet been dissolved.

At all relevant times, Salvatore Manzo was the Vice President and Chief Operating Officer of Beacon. He was also a principal and officer of Salcor. Salcor was Beacon's paying agent, and was responsible for accepting and processing Weaver's payments to Beacon, including Weaver's payments to Beacon for worker's compensation insurance coverage.

---

1. With the exception of Beacon's motion to dismiss Count I of Weaver's Second Amended Cross–Claim (Doc. 144), the arguments raised in each motion to dismiss are subsumed and incorporated into each Defendant/Cross–Defendant/Third–Party Defendant's respective motion for summary judgment. The Court will therefore focus primarily on the motions for summary judgment, and only consider any additional arguments raised in the motions to dismiss where necessary.

Weaver entered into a Client Services Agreement ("CSA") with Beacon on January 1, 2003 (Doc. 47, Ex. E). The CSA was negotiated and executed by Manzo on behalf of Beacon, and by Russell Weaver, as President of Weaver. Under the CSA, Beacon agreed to lease individuals to work for Weaver, and to provide all payroll and human resources services for those persons. More specifically, Beacon agreed to interview, hire, supervise, discipline, and fire individuals assigned to work for Weaver. At all times the individuals Beacon assigned to work for Weaver remained employees of Beacon, and Beacon agreed to remain responsible for the payment of all salaries, federal, state, and local taxes, worker's compensation coverage, and non-obligatory fringe benefits (*Id.*, Ex. E, Section IV, ¶ B). With respect to insurance, Beacon agreed to "furnish and keep in full force and effect, at all times during the term of this Agreement, Workers' Compensation Insurance covering all [Beacon] employees leased to [Weaver] under the terms of this Agreement." (*Id.*, Ex. E, Section V, ¶ A). American Home is not a party to the CSA and is not mentioned in the agreement.

At the time Beacon and Weaver entered into the CSA, Beacon was already providing leased employee services for two other trucking companies owned by Russell Weaver that did business in Illinois and Michigan. Although Beacon contends that it was not authorized to provide services to Weaver in Florida, there is nothing in the CSA that limits its operation to specific geographical areas, and the CSA is silent as to Weaver's business address or the geographical scope of Weaver's operations.

## II. The Insurance Policies

On December 23, 2004, Patrick Green, Beacon's insurance agent, solicited quotes for workers' compensation insurance from the Goff Group, Inc. ("Goff"), an insurance broker located in Alabama. On or about December 27, 2004, American Home received a request from Goff to provide a quote for workers' compensation and employee liability insurance with Weaver as the named insured. Goff submitted its request through American Home's online quoting program, called "PEGA." The online request listed the applicant as "Weaver Aggregate," stated that the insured was located in Alabama, and contained information regarding the nature of Weaver's business, the number of employees, and the estimated annual employee remuneration for the year for which coverage was sought (Doc. 47, Ex. F).

Based on this information, American Home submitted a quote to Goff, who accepted the quote on behalf of Weaver on December 27, 2004. That same day, American Home issued to Weaver a "Binder for Workers' Compensation and Employer Liability Insurance" (Doc. 47, Ex. G). The notification attached to the Binder expressly states that:

> *Binding is subject to the following:*
>
> - Any changes in rates and/or experience modification by any entity having jurisdiction over this policy.
>
> - Final premium will be determined at the end of the policy period after payoffs have been audited and applicable rates and experience modification have been applied.
>
> - Receipt of a completed signed Acord application and experience modification worksheet within 48 hours.

*Id.*

On December 27, 2004, Patrick Green (Beacon's insurance agent) faxed a signed Acord application to Goff, who then hand delivered the Acord to American Home on December 28, 2004, along with $48,539 (representing a 50% down payment and 3

installment payments) (Doc. 47, Exs. H–I). The cover letter to American Home that was attached to the signed Acord was from Goff, and it directed American Home to issue the policy with an effective date of December 28, 2004 (*Id.*, Ex. H). The Acord stated that Weaver was the named insured, and that Weaver had 30 employees (15 trucking employees and 15 clerical employees). The Acord also listed Weaver's business operations address as 1901 Finley Boulevard, Birmingham, Alabama 35234. It was also represented that all of Weaver's employees worked in Alabama (Doc. 47, Ex. I). The Acord application purported to be signed by Russell Weaver, President of Weaver. His signature appeared in two separate places—under "Applicant's Signature" and under "Signature of Corporate Officer." (*Id.*). However, Mr. Weaver testified at his deposition that he never signed the Accord, and that the signatures on the document are a forgery. (Doc. 166, pp. 10–15).

American Home subsequently received a letter dated February 2, 2005 from Goff instructing American Home to provide endorsements adding Florida coverage to the policy with an effective date of January 17, 2005 (Doc. 47, Ex. J). The letter included an Acord Florida Workers Compensation Application dated January 17, 2005, which contained the notarized signature of Russell Weaver as "Owner/Officer" of Weaver (*Id.*, Ex. K). The Acord added an additional location for Weaver at 2020 E. County Road 470, Sumterville, Florida 32585, and listed five (5) clerical and four (4) trucking employees, all of whom were located in Florida (*Id.*).[2] Mr. Weaver testified that he did, in fact, sign this January Acord at the instruction of Patrick Green. However, Mr. Weaver claims that the

Acord was blank when he signed it and that some unknown party filled in the information at a later date. (Doc. 161, pp. 8–9).

American Home then issued a workers' compensation and employee liability insurance policy, Policy # WC 6932505, listing Weaver as the named insured, with coverage from December 28, 2004 through December 28, 2005 (Doc. 47, Ex. L). The policy had an estimated annual premium of $70,542, calculated on the basis of the category of employment of each of Weaver's listed employees, the state in which each employee worked, the estimated total remuneration to each category of employment, and the rate to be applied per $100 of remuneration in each class of employment. The policy provided that the final annual premium would be determined by an audit after the policy's end date (*Id.*).

Beginning on February 22, 2005, Weaver through Beacon, made payments to American Home for the estimated premium. The payments were delivered to a lockbox located in either Pittsburgh or Chicago. It does not appear that Weaver or Beacon missed any payments in 2005. However, Weaver claims that it never received a copy of the policy or was aware that it was listed as the insured until June 2009.

In September 2005, Goff's corporate affiliate Southern Brokerage contacted American Home and requested a renewal of the workers compensation policy for the following year. American Home issued a renewal policy, Policy # WC 8932456, listing Weaver as the insured, for the period December 28, 2005 through December 28, 2006 (Doc. 47, Ex. M). American Home

---

**2.** Beacon contends that Russell Weaver was well aware of the information listed on both Acords concerning the number of employees and the location of Weaver's principal place of business. Beacon further contends that Russell Weaver signed both Acords, and was the source of the false information contained in both applications.

used the same employment information from the previous year and calculated the annual estimated premium payment for the renewal policy at $70,438 (*Id.*). The renewal policy contained the same provision concerning calculation of the final annual premium by an audit following the end of the policy period (*Id.*). Weaver again contends that it never received a copy of this renewal policy, and was not aware that it was listed as the insured until June 2009.

American Home received some payments under the new policy, but canceled the policy effective June 16, 2006 based on Weaver's failure to pay the premiums (*see* Declaration of Susan Pinto, ¶ 10; Doc. 175, Ex. D). During the periods that the two policies were in force, American Home paid benefits on at least seven workers' compensation claims. In total, American Home received $101,043 in premium payments under both policies.

At some point in early 2006, Weaver became dissatisfied with Beacon's management under the CSA and terminated the contract effective April 22, 2006. As of that date, Weaver had paid Beacon approximately $2,894,293, of which $246,620.50 was to be allocated to cover workers' compensation premiums. However, Beacon, through its paying agent Salcor, only paid American Home $101,043 in premiums and apparently kept the difference for itself.

### III. The Current Dispute

Both policies obligated Weaver to allow American Home to conduct an audit of Weaver's business and financial records in order to determine the final amount of the annual premium. American Home attempted to conduct an audit during the second year of coverage, but Weaver failed to cooperate and provided very little information. Instead, Weaver referred American Home to Sal Manzo at Beacon. American Home claims that Beacon was also initially uncooperative, but ultimately provided payroll information to American Home.[3]

During the course of the audit, American Home eventually discovered that Weaver did not conduct any business in Alabama. American Home also learned that the Alabama business address provided on Weaver's Acord was a truck stop unaffiliated with Weaver or Beacon.

American Home completed its audit for the first policy on October 10, 2006, and completed its audit for the second policy on October 30, 2006 (Docs. 175–7, 175–8). American Home discovered that during the December 28, 2004 through December 28, 2005 policy period, Weaver paid Beacon for the services of more than 125 employees, and that all of these employees were located and worked in Florida (Doc. 175–7). American Home found similar discrepancies between the information on the Acord application and the actual number of employees for the policy period from December 28, 2005 through June 16, 2006 (Doc. 175–8). Based on this additional information, American Home calculated a final premium for both policies of $505,056.

Because American Home only received a total of $101,043 in premium payments, it claims that it is owed an additional $404,013 for the two policies plus interest. American Home sent a final invoice to Weaver on July 20, 2007, showing a balance due of $404.013. Weaver failed to contest the invoice, but has refused to make any further payments.[4]

---

3. Beacon disputes this fact and represents that it timely provided American Home with all of Weaver's payroll and employment records.

4. Weaver now contests the amount claimed

### Procedural History

On June 30, 2009, American Home filed a complaint against Weaver in the United States District Court for the Middle District of Alabama based on the same underlying controversy at issue in this case. *See American Home Assurance Company v. Weaver Aggregate Transport,* Case No. 2:09–cv–00612–MEF–SRW (the "Alabama action"). Weaver subsequently filed a third-party complaint against Beacon in the Alabama action. On June 28, 2010, the district court dismissed Weaver's third-party complaint against Beacon for lack of personal jurisdiction (Doc. 47, Ex. A, pp. 12–25).

On July 6, 2010, American Home and Weaver filed a stipulation agreeing to dismissal of the Alabama action without prejudice, in part because Beacon was a necessary party to American Home's claims, and with the mutual understanding that American Home would file a new lawsuit in Florida (Doc. 47, Ex. A, pp. 26–27). Judgment dismissing the Alabama action without prejudice was entered on June 7, 2010 (*Id.,* p. 28).

American Home then filed the present lawsuit against both Weaver and Beacon on July 22, 2010 (Doc. 1), and an Amended Complaint on March 11, 2011 (Doc. 47). The Amended Complaint alleges seven claims: (1) a claim for breach of contract against Weaver (Count I); (2) a claim for unjust enrichment against Weaver (Count II); (3) a claim for account stated against Weaver (Count III); (4) a claim for open account against Weaver (Count IV); (5) a claim for fraudulent inducement against both Weaver and Beacon (Count V); (6) a claim for unjust enrichment against Beacon (Count VI); and (7) a claim for breach of third party beneficiary contract against Beacon (Count VII).

On September 23, 2011, Weaver filed its crossclaim and third party complaint against Beacon, Manzo, and Salcor (Doc. 75). With leave of Court (Docs. 118, 142), Weaver filed a Second Amended Crossclaim and Third Party Complaint on March 29, 2013 (Doc. 143). The Second Amended Crossclaim and Third Party Complaint asserts seven crossclaims against Beacon alleging breach of contract, contractual and common law indemnity, breach of fiduciary duty, civil conspiracy, civil RICO, and negligence.[5] Weaver has also asserted seven third party claims against Manzo and Salcor alleging common law indemnity and civil conspiracy, civil RICO, and negligence.

### Applicable Standards of Review

#### I. Summary Judgment Standard of Review

Federal Rule of Civil Procedure 56(a) provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

by American Home, stating that it includes approximately $145,578 in worker's compensation premiums that Weaver paid to Beacon and which Beacon never forwarded to American Home. Weaver also claims that the premium American Home calculated improperly includes workers who should not have been covered (such as an officer of Weaver and an owner-operator). Instead, Weaver claims that the full amount of the premium for both policies should be $224,159.47, and because Weaver submitted to Beacon $246,620.50 for worker's compensation premiums, Weaver

actually overpaid for both policies. *See* Joint Pretrial Statement, Doc. 192, pp. 7–8. Beacon also argues that the amount of unpaid premiums claimed by American Home is excessive and was improperly calculated.

5. Weaver had also asserted a crossclaim against Beacon for violations of Florida's Deceptive and Unfair Trade Practice Act; however, Weaver voluntarily dismissed this claim on June 4, 2013 (Docs. 152, 154).

judgment as a matter of law." In applying this standard, the Court must examine the materials on file and the record evidence "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988). When faced with a "properly supported motion for summary judgment [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.,* 131 F.3d 995, 999 (11th Cir. 1997). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.,* 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

At the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to decide whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Some degree of factual dispute is expected, but to successfully counter a motion for summary judgment the factual dispute must "affect the outcome of the suit" and must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.,* at 248, 106 S.Ct. at 2510.

## II. Motion to Dismiss Standard of Review

In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate." *Int'l Erectors, Inc. v. Wilhoit Steel Erectors Rental Serv.,* 400 F.2d 465, 471 (5th Cir. 1968). For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences that might be drawn from such allegations. *Speaker v. U.S. Dep't of Health & Human Servs.,* 623 F.3d 1371, 1379 (11th Cir.2010); *Jackson v. Okaloosa County, Fla.,* 21 F.3d 1531, 1534 (11th Cir.1994). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

In order to avoid dismissal, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" and that rises "above the speculative level." *Speaker,* 623 F.3d at 1380 (citing *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1964–65, 1974). A claim is facially plausible " 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Id.,* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)). The plausibility standard requires that a plaintiff allege sufficient facts to nudge his "claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974.

## Discussion

### I. Weaver's Motion for Partial Summary Judgment

Weaver claims it is entitled to summary judgment on American Home's breach of contract claim (Count I) for two reasons. First, Weaver contends that neither insurance policy constitutes a valid, binding contract between the Parties because the relevant documents—specifically the PEGA online application and the two Acord applications—have not been authenticated and are inadmissible hearsay. Second, Weaver

argues that the two Acord applications are invalid because the signature of Russell Weaver was forged on the first Acord, and there is no undisputed evidence establishing who filled out the incorrect information on the second. In addition, Weaver contends that the second Acord was signed after the first policy had been issued and therefore there was no outstanding offer to accept. As such, Weaver says there is no evidence that there was an offer and/or acceptance such that a binding, enforceable contract ever existed.

■ Weaver's hearsay argument is unpersuasive. The Acords may be admissible either under Fed.R.Evid. 803(6) as a business record exception, or under Rule 801(d)(2) as an admission of a party-opponent. They may also be admissible under Fed.R.Evid. 801(c) because they are not being admitted for the truth of the matter asserted. As American Home states in its response (Doc. 175, p. 15), the Acords are not being admitted to establish the truth of the information contained in them—that Weaver was actually located in Alabama or had only 15 trucking employees. Rather, American Home intends to use these Acords to show that the statements were made and to explain why it was induced into issuing insurance policies with lower premiums.

■ Weaver's other arguments are equally unavailing. Whether Russell Weaver's signature was forged on the first Acord, whether he was aware of the information contained in the second Acord, and the identity of the person(s) who completed the information on both Acords all involve disputed issues of fact and questions

of credibility that are to be resolved by the ultimate trier of fact at trial. Moreover, the record before the Court suggests the existence of a binding contract. There is no dispute that American Home issued two insurance policies naming Weaver as the insured, and American Home has proffered copies of both policies (Doc. 47, Exs. L–M). There is also no dispute that American Home performed under the terms of both policies, that Weaver paid premiums to American Home through Beacon on both policies, and that Weaver and Beacon accepted and received benefits under the policies when American Home paid several workers compensation claims.[6] In addition, Weaver admitted in its crossclaim and third party complaint that it intended for all persons who performed work for Weaver to be covered by workers compensation insurance, and that it in fact paid premiums to Beacon to cover the workers compensation insurance policies at issue in this case. See Doc. 143, ¶¶ 10, 22, 24, 29, 33. These facts and allegations are more than sufficient to defeat summary judgment at this time.

Weaver's motion for partial summary judgment will be Denied.

## II. Beacon's Motion to Dismiss

Beacon has moved to dismiss all seven of the crossclaims asserted by Weaver (Doc. 144), however, the Court will limit its present discussion to Beacon's motion to dismiss Count I—the breach of contract crossclaim. Beacon's motion for summary judgment (which subsumes its motion to dismiss) addressing Weaver's other crossclaims will be discussed *infra*.

---

6. There is an unresolved question concerning whether Illinois law (where Russell Weaver purportedly signed the Acords), or New York law (where American Home is located) applies to the breach of contract claim. However, both Illinois and New York recognize that a contract may be ratified through conduct, including the acceptance of benefits arising under the contact. *See, e.g., Gorman Publishing Co. v. Stillman*, 516 F.Supp. 98, 110 (N.D.Ill.1981); *O'Brien v. Argo Partners, Inc.*, 736 F.Supp.2d 528, 534 (E.D.N.Y.2010).

Weaver alleges that Beacon breached the CSA by: (1) falsely identifying Weaver as the employer to be insured under the two workers' compensation insurance policies; (2) grossly under-reporting to American Home the number of employees Beacon leased to Weaver; (3) grossly under-reporting to American Home the amount of the employee payroll; (4) providing false information to American Home regarding the location and classification of the employees; and (5) failing to indemnify, defend, and hold Weaver harmless against American Home's claims against Weaver in this case (Doc. 143, ¶ 49). The CSA contains a choice of law provision providing that Nevada law applies, and the Parties agree that Nevada law governs this claim. (Doc. 143-1, p. 11, Section IX, ¶ I).

Beacon argues that this crossclaim should be dismissed because the CSA is not an enforceable contract. Specifically, Section III of the CSA states that "[Weaver] shall pay [Beacon] a service fee as described in the Rate Sheet attached to this Agreement as Exhibit A and incorporated by reference, as same may be amended from time to time." (Doc. 143, p. 4, Section III). Beacon contends that no Rate Sheet was attached to the CSA, and therefore the parties did not agree to the pricing terms, which is a material term to the contract. Beacon further argues that this service fee provision could not be modified by any outside document or oral agreement due to the CSA's integration clause: "This Agreement and the Exhibits attached may be altered, modified, or amended only by a written memorandum signed by both the parties to the Agreement." (Doc. 143, p. 10, Section IX, ¶ C).

■■■ This argument fails because Weaver has provided evidence in the form of weekly invoices Beacon issued to Weaver—and that Weaver paid to Beacon— showing that Weaver paid a service fee to Beacon throughout the life of the CSA. (Doc. 143-4). Nevada law recognizes that a contract may become binding and enforceable where the conduct of the parties demonstrates agreement to all material terms. *See Merrill v. DeMott*, 113 Nev. 1390, 951 P.2d 1040, 1044 (1997); *European Motors, Ltd. v. Oden*, 75 Nev. 401, 344 P.2d 195, 197 (1959). Moreover, there is no dispute that Beacon provided Weaver with leased employees for several years pursuant to the terms of the CSA, and that Beacon provided all payroll services for those employees. Thus, both Weaver and Beacon clearly performed under the terms of the CSA, and Beacon's motion to dismiss shall be Denied.

Beacon next argues that the CSA is invalid for the purposes of obtaining worker's compensation insurance in Florida because Beacon is not licensed to conduct business in Florida. Beacon points to Fla. Stat. § 468.526(1), which requires all employee leasing companies who wish to engage in business in Florida to first obtain a license from the Florida Department of Business and Professional Regulation. Because Beacon does not have a license in Florida, it could not provide leasing services to Weaver in Florida, and therefore the CSA was impossible to perform in Florida and is invalid on its face.

■■■ "Generally, the defense of impossibility is available to a promissor where his performance is made impossible or highly impractical by the occurrence of unforeseen contingencies, but if the unforeseen contingency is one which the promissor should have foreseen, and for which he should have provided, this defense is unavailable to him." *Nebaco, Inc. v. Riverview Realty Co.*, 87 Nev. 55, 482 P.2d 305, 307 (1971) (citing Restatement of Contracts, § 454 (1932)). However, the requirement of a license to engage in busi-

ness in the state cannot form the basis of an impossibility of performance defense in an action brought by a customer of the putative licensee unless the customer himself is *in pari delicto* with the putative licensee. The licensing law is purposed in major part to protect, not punish, the customer; and while the contractor may be subject to sanctions by the state (including the forfeiture of any proceeds gained from contracts entered into in violation of the licensing law), that does not deprive the customer of the right to sue for breach of the unperformed contract. *See Day v. West Coast Holdings, Inc.*, 101 Nev. 260, 699 P.2d 1067, 1071 (1985).

Further weighing against dismissal of this crossclaim is Weaver's argument that Beacon should be estopped from asserting the defense of impossibility because Beacon in fact performed under the contract for years, and accepted payments from Weaver of nearly $3 million. *See United Brotherhood of Carpenters and Joiners of America, Local No. 1780 v. Dahnke*, 102 Nev. 20, 714 P.2d 177 (1986) (discussing doctrine of equitable estoppel). In addition, the CSA provides that Beacon will not hold Weaver responsible for any failure by Beacon "to conduct itself in accordance with applicable federal, state, and local laws." (Doc. 143–1, p. 6, Section IV, ¶ B).

Accordingly, Beacon's motion to dismiss Count I of the Second Amended Crossclaim will be Denied.

### III. Beacon's Motion for Summary Judgment

#### A. The Contractual Indemnity Crossclaim

The CSA contains an indemnification provision whereby Beacon and Weaver mutually agreed to indemnify, defend, and hold each other harmless from: ·

> any and all liability, expense, including court costs and attorney fees and claims for damages or injury of any nature whatsoever, whether known or unknown, which [Beacon] or [Weaver] may incur, suffer, become liable for or which may be asserted or claimed against [Beacon] or [Weaver] as a result of their acts, errors, or omissions, including without limitation any violation or breach of Section 6, above, by [Weaver].

(Doc. 143–1, p. 9, Section VIII).[7] Based on this provision, Weaver contends that Beacon must indemnify Weaver against all claims asserted by American Home against Weaver, including the breach of contract claims, and the tort claim for fraudulent inducement. Beacon, however, contends that the indemnification provision is invalid under Nevada law, and therefore Weaver's claim for contractual indemnity must fail.

 "Typically, '[c]ontractual indemnity is where, pursuant to a contractual provision, two parties agree that one party will reimburse the other party for liability resulting from the former's work.'" *Reyburn Lawn & Landscape Designers, Inc. v. Plaster Dev. Co., Inc.*, 255 P.3d 268, 274 (Nev.2011) (alteration in original) (quoting *Medallion Dev. v. Converse Consultants*, 113 Nev. 27, 930 P.2d 115, 119 (1997) (superseded by statute on other grounds as stated in *Doctors Company v. Vincent*, 120 Nev. 644, 98 P.3d 681, 688 (2004))). "When the duty to indemnify arises from contractual language, it generally is not subject to equitable considerations; 'rather it is enforced in accordance with the terms of the contracting parties' agreement.'"

---

7. Section 6 relates to Weaver's obligations to maintain a safe working environment (*Id.*, p. 8, Section VI).

*Id.,* (quoting *Prince v. Pacific Gas & Elec. Co.,* 45 Cal.4th 1151, 90 Cal.Rptr.3d 732, 202 P.3d 1115, 1120 (2009)). "The scope of a contractual indemnity clause is determined by the contract and is generally interpreted like any contract." *George L. Brown Ins. Agency, Inc. v. Star Ins. Co.,* —— Nev. ——, 237 P.3d 92, 97 (Nev.2010). As such, courts in Nevada "strictly construe the indemnity clause's language." *Reyburn,* 255 P.3d at 275 (citation omitted).

Applying this law, Beacon argues that the indemnity clause in the CSA is invalid in its entirety because it does not explicitly require Beacon to indemnify Weaver for Weaver's own negligent acts. Rather, the indemnity clause only protects Weaver from "any and all liability" arising "as a result of their acts, errors, or omissions" and such general language cannot cover claims based on Weaver's own negligence. *See United Rentals Highway Technologies, Inc. v. Wells Cargo, Inc.,* —— Nev. ——, 289 P.3d 221, 226–228 (Nev.2012) (finding subcontractor's duty to indemnify was limited to subcontractor's own negligence or wrongful acts where indemnification clause did not explicitly state that subcontractor would also indemnify general contractor for general contractor's own negligence); *Reyburn,* 255 P.3d at 274–75 (holding that subcontractor was not obligated to indemnify general contractor for general contractor's own negligence where indemnification clause did not expressly state that subcontractor would indemnify general contractor for such negligence); *Star Ins. Co.,* 237 P.3d at 97–98 ("[C]ontracts purporting to indemnify a party against its own negligence will only be enforced if they clearly express such an intent and a general provision indemnifying the indemnitee 'against any and all claims,' standing alone, is not sufficient.") (quotation and citation omitted).

■ Although Beacon correctly describes the law in Nevada, it does not defeat Weaver's contractual indemnity claim in this case. None of the claims American Home has alleged against Weaver are based on any theories of negligence, and Weaver is not seeking indemnification from Beacon for Weaver's own negligence. Rather, as Weaver explains in its responses (Doc. 149, p. 6; Doc. 176, pp. 3–4), Weaver is seeking indemnification for Beacon's own wrongful acts—namely providing American Home with incorrect information on the Acord applications and failing to remit to American Home the full amount of premium payments due and owing. Under these facts, where Weaver is only seeking indemnification for Beacon's own purported actions, the indemnification clause contained in the CSA is valid and applicable. And in any event, even if Weaver were seeking indemnification for its own negligence, the proper response would be to limit the indemnification clause to exclude indemnification of such negligence and apply the clause to any claims based on Beacon's wrongful acts. Voiding the entire indemnification clause would not be appropriate. *See United Rentals,* 289 P.3d at 226–28.

Summary judgment on this claim shall be Denied.

## B. The Common Law Indemnity Crossclaim

In its third crossclaim against Beacon, Weaver contends that any liability attributed to it as a result of American Home's claims should be passed on to Beacon. Specifically, Weaver alleges that Beacon affirmatively represented to Weaver that Beacon would secure and maintain worker's compensation insurance coverage for its leased employees, and that Beacon is the true party at fault in this case because Beacon (through its agents) provided false

information to American Home on the Acord applications. As such, Weaver claims it is not at fault and can only be held vicariously or derivatively liable for Beacon's wrongful actions. The parties agree that Florida law governs this cross-claim.

In Florida, the claim of common law indemnity "arises out of obligations imposed through special relationships." *Rosenberg v. Cape Coral Plumbing, Inc.*, 920 So.2d 61, 65 (Fla. 2d Dist.Ct.App.2005). "To state a claim for common law indemnity, a party must allege that he is without fault, that another party is at fault, and that a special relationship between the two parties makes the party seeking indemnification vicariously, constructively, derivatively, or technically liable for the acts or omissions of the other party." *Tsafatinos v. Family Dollar Stores of Florida, Inc.*, 116 So.3d 576, 581 (Fla. 2d Dist.Ct.App. 2013) (citations omitted). "Indemnity rests upon the fault of another which has been imputed to or constructively fastened upon the one seeking indemnity, and there can be indemnity between joint tortfeasors." *Houdaille Industries, Inc. v. Edwards*, 374 So.2d 490, 493 (Fla.1979). If both parties are at fault, no matter how slight the fault of the party seeking indemnity, recovery for common law indemnity is precluded. *Id.*, at 494.

Weaver has properly alleged all of the elements of a claim for common law indemnity (Doc. 143, ¶¶ 54–57), and Beacon does not dispute this. Instead, Beacon argues it is entitled to summary judgment on this claim because in its original complaint and amended complaint (Docs. 1, 47), American Home has alleged claims asserting fault on the part of *both* Weaver and Beacon. If Weaver is found to be at fault at all on any of American Home's

asserted claims, then common law indemnity would not apply. And if Beacon is found to be solely at fault on any of the claims asserted against it by America Home, then there would be no liability attributed to Weaver for which indemnification would be required.

While Beacon's analysis may be correct, this argument is premature. Beacon's argument (which is identical to the argument raised in its motion to dismiss) is limited solely to the allegations of American Home's pleadings—Beacon has not put forth any facts that would support its contention that Weaver is at fault with respect to any claim for which it seeks indemnification. Indeed, Beacon's argument itself is asserted as a contingency. It is impossible to determine at this point in time whether Weaver is at fault, and/or will be found liable on any of American Home's claims. It is equally impossible to ascertain at this stage whether any potential liability imputed onto Weaver will be solely based on the derivative or vicarious liability existing from the special relationship between Beacon and Weaver. These determinations can only be made by the ultimate trier of fact at trial. Accordingly, Beacon's motion for summary judgment will be Denied as to the common law indemnity crossclaim. *See Diplomat Properties Ltd. Partnership v. Tecnoglass, LLC*, 114 So.3d 357, 363 n. 2 (Fla. 4th Dist.Ct.App.2013).

## C. The Breach of Fiduciary Duty Crossclaim

Weaver's fourth crossclaim alleges that Beacon and Weaver had a special relationship whereby Beacon affirmatively represented that it would secure and maintain worker's compensation insurance coverage for all leased employees. Weaver further alleges that because of this special relationship, Beacon had a duty to ensure that

it was the named insured on the two worker's compensation insurance policies; and had a duty to provide the correct information to American Home concerning the number of leased employees, their geographic location; and their payroll information. Weaver contends that Beacon breached these duties by listing Weaver as the named insured, and by providing false information to American Home on both Acord applications, causing Weaver injury and damages. The Parties agree that Florida law applies.

■■■■■■ Beacon argues that this crossclaim is barred by the applicable statute of limitations. Claims for breach of fiduciary duty in Florida are subject to a four-year statute of limitations, which begins to run after the breach and resulting damages have occurred. *See* Fla. Stat. § 95.11(3)(*o* ); *Halkey–Roberts Corp. v. Mackal,* 641 So.2d 445, 447 (Fla. 2d Dist. Ct.App.1994); *Patten v. Winderman,* 965 So.2d 1222, 1224 (Fla. 4th Dist.Ct.App. 2007). The Florida Supreme Court has held that the delayed discovery doctrine, in which a claim does not accrue until the plaintiff either knows or reasonably should know of the act giving rise to the claim, does not apply to claims for breach of fiduciary duty. *Davis v. Monahan,* 832 So.2d 708 (Fla.2002). Beacon contends that the statute of limitations on Weaver's crossclaim began to run at the latest on April 22, 2006, when Weaver terminated the CSA and ceased doing business with Beacon. According to Beacon, any damages incurred by Weaver would have taken place during the life of the CSA when the worker's compensation policies were in effect, and Beacon was accepting payments from Weaver and making premium payments to American Home. Because Weaver did not seek leave to file any crossclaims until June 9, 2011 (Doc. 60), the breach of fiduciary duty claim would be outside the four year statute of limitations.[8]

In response, Weaver cites to an earlier Florida Supreme Court decision, *Penthouse North Ass'n v. Lombardi,* 461 So.2d 1350, 1352 (Fla.1985). *Penthouse North* involved a condominium association that brought an action for breach of fiduciary duty against its directors and officers for enforcing a rent escalation clause. The rent escalation clause was included in a 99–year recreation lease that was executed in 1966, but the clause was not enforced until 1979. The association claimed that the directors and officers breached their fiduciary duties by not disclosing the escalation clause in 1966, but did not file suit until 1979, when they first received notice that the escalation clause was going to be enforced. The Supreme Court of Florida held that the breach of fiduciary duty action did not accrue until either 1979, when the association received notification that the escalation clause would be enforced, or 1981, when the demand was made for the escalated rent. At that point in time, the last element of the breach of fiduciary duty claim—damages—in fact occurred. 461 So.2d at 1352.

Weaver relies on *Penthouse North* as authority for the proposition that a breach of fiduciary duty claim does not accrue until a plaintiff receives notice of the damage. Weaver misinterprets the meaning of "notice" in *Penthouse North.* The Florida Supreme Court nowhere stated that a breach of fiduciary duty claim does not accrue until a plaintiff receives notice of the damages—rather the Court clearly stated that the claim accrues when the

8. After allowing substantial briefing by Beacon and Weaver, the Court granted Weaver leave to file its crossclaims on September 16, 2011, and they were filed on September 23, 2011 (Docs. 74–75).

damage in fact occurs. And in *Penthouse North*, there was no damage—*i.e.* there was no payment of additional monies—until 1981, and the plaintiffs were not aware that any additional payments would have to be made until 1979. Stated differently, the Florida Supreme Court held that the notice itself was the earliest occurrence of any damage, and therefore the claim would accrue, and the statute of limitations would begin to run either at that time, or at the time the additional payments were to be made.

In the present case, the actual damage Weaver suffered clearly occurred in 2005 and 2006, when it made the allegedly excessive payments to Beacon for worker's compensation insurance premiums, and when Beacon purportedly provided false information to American Home. Thus, all of the elements of Weaver's claim for breach of fiduciary duty—the breach of a duty and damages—occurred in 2005 and 2006 and ended in April 2006 when Weaver terminated the CSA and ostensibly ceased making payments to Beacon. The fact that Weaver claims it did not have any notice of the breach or damages until June 2009 is irrelevant. Weaver did not seek leave to file its crossclaim until June 2011; therefore it is time barred unless some tolling doctrine applies.

▇▇▇▇ Weaver argues that even if the statute of limitations began to run in April 2006, it should be tolled under the equitable doctrine of fraudulent concealment.[9] The doctrine of fraudulent concealment will operate to toll the statute of limitations "when it can be shown that fraud has been perpetrated on the injured party suf-

ficient to place him in ignorance of his right to a cause of action or to prevent him from discovering his injury." *Nardone v. Reynolds*, 333 So.2d 25, 39 (Fla.1976), modified on other grounds, *Tanner v. Hartog*, 618 So.2d 177 (Fla.1993). To establish fraudulent concealment, a claimant must allege and establish: "(1) successful concealment of the cause of action, (2) fraudulent means to achieve that concealment, and (3) plaintiff exercised reasonable care and diligence in seeking to discover the facts that form the basis of his claim." *Burr v. Philip Morris USA Inc.*, 2012 WL 5290164 (M.D.Fla. Sept. 28, 2012) (citing *Berisford v. Jack Eckerd Corp.*, 667 So.2d 809, 811–12 (Fla. 4th Dist.Ct.App.1995)).

▇▇▇▇ A review of the record readily establishes that Weaver has both alleged all of the elements of fraudulent concealment, and that material issues of fact remain in dispute concerning each element. Weaver has alleged and presented deposition testimony that Beacon provided false information to American Home, concealed the fact that such false information had been provided, and collected higher premium payments from Weaver than Beacon remitted to American Home. In turn, Beacon has presented evidence that Weaver was well aware of the information provided to American Home, as well as the amount of the premium payments. These factual disputes prevent the Court from ruling on the tolling argument at this time, and also preclude the entry of summary judgment on this crossclaim. Summary judgment will be Denied as to the breach of fiduciary

---

9. The fact that the delayed discovery doctrine does not apply to breach of fiduciary duty claims does not impact the Court's analysis of whether the statute of limitations has been tolled. The delayed discovery doctrine applies to determine when a cause of action accrues, and in turn, when the statute of

limitations first begins to run. Tolling doctrines apply after the cause of action has accrued and the limitations period has begun, and address whether the running of the limitations period should be stayed for some specific period of time.

duty crossclaim.[10]

## D. The Civil Conspiracy Crossclaim

Weaver's fifth crossclaim asserts a claim of civil conspiracy against Beacon. More specifically, Weaver asserts that Beacon, along with Manzo, Salcor, and Patrick Green, conspired to commit fraud by knowingly providing inaccurate information to American Home and withholding premium payments made by Weaver. The Parties agree that Michigan law should apply to this crossclaim.

### 1. Statute of Limitations

■■■■ Beacon first argues that it is entitled to summary judgment because the applicable statute of limitations expired before Weaver filed its crossclaim. The statute of limitations that applies to a claim for civil conspiracy in Michigan is the same limitations period that would apply to the underlying wrong that is the object of the conspiracy. *Terlecki v. Stewart*, 278 Mich. App. 644, 754 N.W.2d 899, 906 (2008). And "it is the wrongful act, not the agreement to commit a wrongful act, that commences the running of the limitations period." *Id.*, Weaver alleges that Beacon, Manzo, Salcor, and Patrick Green "pursued a conspiracy of deceit and misrepresentation" and "to commit fraud." (Doc. 143, ¶ 68). Thus it would appear that the six-year statute of limitations for fraud claims applies to Weaver's civil conspiracy crossclaim. *See* Mich. Comp. Laws. Ann. § 600.5813.[11]

■■■■ A claim for fraud accrues when the fraudulent misrepresentation is made. "[T]he claim accrues at the time the wrong upon when the claim is based was done regardless of the time when damage re-

---

10. Although Fla. Stat. § 95.051 lists the bases for tolling statutes of limitations in Florida, including the limitations period applicable to breach of fiduciary duty claims, at least one Florida court has held that the doctrine of fraudulent concealment still applies. *See Berisford v. Jack Eckerd Corp.*, 667 So.2d 809 (Fla. 4th DCA 1995). This is so because "courts will not protect defendants who are directly responsible for the delays of filing because of their own willful acts." *Vargas v. Glades General Hospital*, 566 So.2d 282, 285 (Fla. 4th DCA 1990) (quoting *Nardone*, 333 So.2d at 36). The Court also notes that there is an apparent conflict amongst the federal district courts concerning whether this tolling doctrine still exists in Florida. *See Pacific Harbor Capital, Inc. v. Barnett Bank, N.A.*, 2000 WL 33992234 at *11 (M.D.Fla. Mar. 31, 2000) (noting that the tolling doctrine of fraudulent concealment is no longer available), and *Krawchenko v. Raymond James Financial Services, Inc.*, 2013 WL 489088 at *3, n. 2 (M.D.Fla. Feb. 8, 2013) (recognizing existence of fraudulent concealment tolling doctrine but finding that plaintiff did not properly allege all elements). The Florida Supreme Court previously held that the fraudulent concealment doctrine no longer existed, and that the only viable tolling doctrines were enumerated in Fla. Stat. § 95.051; however the court subsequently withdrew that opinion. *See Fulton County Admin. v. Sullivan*, 1997 WL 589312 (Fla. Sept. 25, 1997), withdrawn and superseded by 753 So.2d 549 (Fla.1999). As such, there is no definitive law on this subject in Florida, and this Court will not create new law and hold that the doctrine does not apply. *Cf. Major League Baseball v. Morsani*, 790 So.2d 1071 (Fla.2001) (holding that defendants may be estopped from raising defense of statute of limitations even though equitable estoppel is not listed in Fla. Stat. § 95.051).

11. Both Weaver and Beacon also mention in their motion papers that the underlying wrong for the civil conspiracy crossclaim may be breach of the CSA. Although the Court does not read such allegations in the crossclaim, it is a distinction without a difference for purposes of determining the statute of limitations. Michigan also applies a six-year statute of limitations for breach of contract claims. Mich. Comp. Laws. Ann. § 600.5807(8). Moreover, a claim for breach of contract accrues when the breach occurs— which in this case would have been the same dates as the alleged fraudulent acts. *See Blazer Foods, Inc. v. Restaurant Props., Inc.*, 259 Mich.App. 241, 673 N.W.2d 805 (2003).

sults." *Boyle v. General Motors Corp.*, 468 Mich. 226, 661 N.W.2d 557, 559–60 (2003). *See also* Mich. Comp. Laws Ann. § 600.5827. However, when a defendant fraudulently conceals the existence of the misrepresentation, the plaintiff may bring an action "at anytime within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations." Mich. Comp. Laws. Ann. § 600.5855. Thus, if fraudulent concealment exists, a plaintiff has either six years from the date of the alleged fraud to file suit, or two years from the date of discovery of the fraud, whichever is longer. *Benoay v. Decker*, 517 F.Supp. 490, 496 (E.D.Mich.1981).

■ In this case, Weaver alleges that the wrongful acts Beacon and its purported coconspirators undertook were: (1) providing false information to American Home; and (2) withholding premium payments made by Weaver that should have been remitted to American Home. The false information acts would have occurred at the time the two Acord applications were submitted to American Home—December 27, 2004 and January 17, 2005. The withholding of premium payments, however, would have occurred throughout 2005 and 2006, until Weaver terminated the CSA on April 22, 2006. Weaver argues that it is the last wrongful act that triggers the running of the statute of limitations—an argument akin to a continuing violations theory. Michigan does not recognize a continuing violations doctrine for purposes of establishing when a statute of limitations begins to run. *Garg v. Macomb County Comm. Mental Health Services*, 472 Mich. 263, 696 N.W.2d 646, 656–660 (2005). Weaver sought leave to file its crossclaims on June 9, 2011 (Doc. 60), thus the statute of limitations would cut off for any wrongful acts that occurred prior to June 9, 2005.

■ This does not end the analysis, because Michigan's additional fraudulent concealment statute of limitations may apply to this crossclaim. As previously discussed, Weaver has alleged and presented evidence that Beacon concealed the fact that it (through Manzo, Salcor, and Patrick Griffin) provided false information to American Home, and collected higher premium payments from Weaver than Beacon actually remitted to American Home. Weaver has also submitted evidence that it did not learn of the purported fraud and conspiracy until June 30, 2009, when the Alabama action was initiated. In turn, Beacon has presented evidence challenging these facts. If the additional two-year fraudulent concealment statute of limitations were to apply, it would have begun to run on June 30, 2009, and Weaver's crossclaim would be timely filed. Material issues of disputed fact prevent the Court from determining at the summary judgment stage whether this additional limitations period applies.

### 2. Sufficiency of the Evidence

Beacon next argues that summary judgment is warranted because Weaver cannot establish any facts supporting the elements of a civil conspiracy claim. The elements of a claim for civil conspiracy in Michigan are: (1) a concerted action; (2) by a combination of two or more persons; (3) to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means. *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 194 Mich.App. 300, 486 N.W.2d 351, 358 (1992) (citations omitted). Beacon contends that the only persons involved in this purported conspiracy are Beacon, its officer/employee (Manzo), and its agents (Salcor, of which

Manzo is also a corporate officer, and Patrick Green); therefore there was no "combination of two or more persons" to form the conspiracy. According to Beacon, there can be no conspiracy between a corporation and its own agents and employees.

Michigan applies an "intra-corporate conspiracy" doctrine, which holds that a cause of action does not exist for civil conspiracy between a corporation and its agents, employees, officers, and directors when they are acting within the scope of their employment or agency authority. *See Landmark Sav. & Loan v. Loeb Rhoades Hornblower & Co.,* 527 F.Supp. 206, 209 (E.D.Mich.1981); *Tropf v. Holzman & Holzman,* 2006 WL 120377 at *1 (Mich.Ct.App. Jan. 17, 2006). "[A]n agent or employee cannot be considered a separate entity from his principal or corporate employer, respectively, as 'long as the agent or employee acts only within the scope of his agency [or] employment.'" *Blair v. Checker Cab Co.,* 219 Mich.App. 667, 558 N.W.2d 439, 442 (1996) (quoting *Metro Club, Inc. v. Schostak Bros. & Co., Inc.,* 89 Mich.App. 417, 280 N.W.2d 553, 554 (1979)).

These cases cannot be read to mean, however, that a corporation can enter into a conspiratorial agreement with a separate corporation (that is not its *alter ego* or a subsidiary) and escape civil liability under the intra-corporate conspiracy doctrine simply because the second corporation has become the "agent" of the first corporation in relation to the object of the agreement. If that was the law, then no corporation could ever be held responsible for a conspiracy. By definition, a conspiracy involves a combination in which every member of the scheme becomes the agent of every other member for purposes of carrying out the object of the agreement. Clearly the intra-corporate conspiracy doctrine—that a corporation, like any other person, cannot conspire with itself—does not stretch that far. To come within that doctrine the agency relationship must be one in which the "agent" is joining the conspiracy or making the conspiratorial agreement *for the corporation,* not for himself or on behalf of a separate corporation. Each of the cited Michigan cases can be distinguished on that basis. In *Landmark Sav. & Loan,* the conspiracy claim (involving churning of commissions) was made against a stock brokerage house and one of its broker employees. In *Tropf,* the relationship of the alleged conspirators is unclear; the court merely quoted the doctrine and ultimately held that there was no proof of fraud in any event. In *Blair,* the alleged conspirators were members of, and acting for, a business cooperative which, the court held, could not conspire with itself. In *Metro Club, Inc.,* the conspiracy was alleged to exist between a shopping center corporation and its manager who acted for the corporation in the disputed transaction.

In the present case, it is alleged, and the Parties have submitted evidence showing, that the purported conspiracy involved separate corporate entities—Beacon and Salcor—a principal/officer of both corporations, and a separate insurance agent—Patrick Green—who worked together to defraud Weaver and American Home. There are no allegations or evidence suggesting that these conspirators are subsidiaries or alter egos of Beacon. Moreover, Weaver has alleged in its cross-claims and third-party claims that the conspiracy was undertaken in order to enrich each specific conspirator; there are no allegations that the object of the purported conspiracy was to benefit Beacon alone (thereby lending credence to the argument that the conspirators were so closely related that they were in essence one corporate

**1276**

entity conspiring with itself). *See* Doc. 143, ¶¶ 70, 79, 87. The facts available to the Court at this time are also in dispute over whether, and to what extent, the purported conspiracy operated to benefit each individual member. Under these circumstances, the Court cannot say at this time that Michigan's intra-corporate conspiracy doctrine bars this claim.

Summary judgment will be Denied as to this crossclaim.

### E. The Civil RICO Crossclaim

▪ Weaver's penultimate crossclaim against Beacon is a civil claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. To establish a claim for civil RICO, a plaintiff must prove: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *Sedima, SPRL v. Imrex Co., Inc.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *Williams v. Mohawk Indus., Inc.,* 465 F.3d 1277, 1282 (11th Cir.2006). In short, Weaver claims that Beacon was a member of an enterprise along with Manzo, Salcor, Patrick Green, Goff Group, and Southern Brokerage, and that this enterprise engaged in a pattern of racketeering activity. Specifically, Weaver contends that Beacon and the other enterprise members submitted false and fraudulent Acord applications to American Home, and engaged in a scheme whereby Weaver paid workers' compensation insurance premiums to Beacon at a much higher amount than Beacon actually transmitted to American Home.

Beacon first argues that this claim is barred by the applicable four-year statute of limitations. *See Rotella v. Wood,* 528 U.S. 549, 553, 120 S.Ct. 1075, 1080–81, 145 L.Ed.2d 1047 (2000). Beacon argues that the pattern of racketeering activity alleged in the crossclaim occurred either at the time the Acord applications were submit-

ted (December 2004 and January 2005) or during the life of the CSA, and therefore the latest this cause of action could have accrued would have been April 22, 2006, when the CSA was terminated. As such, Beacon contends that the limitations period would have expired on April 22, 2010.

▪ Material issues of fact remain in dispute which prevent the granting of summary judgment on statute of limitations grounds. The limitations period for civil RICO actions begins to run "when the injury was or should have been discovered, regardless of whether or when the injury is discovered to be part of a pattern of racketeering." *Lehman v. Lucom,* 727 F.3d 1326, 1330 (11th Cir.2013) (quoting *Maiz v. Virani,* 253 F.3d 641, 676 (11th Cir.2001) (citing *Rotella,* 528 U.S. at 555, 120 S.Ct. at 1080)). Based on the evidence submitted to date, it is unclear when Weaver discovered—or more importantly *should* have discovered—the alleged injuries. Beacon has presented evidence that Weaver knew all along that the information provided to American Home grossly understated the number and nature of the employees covered; while in contrast Weaver has presented evidence that it did not learn of the false information provided to American Home until June 2009, well within the four-year limitations period.

▪ Next, Beacon argues that Weaver has failed to establish the elements of "enterprise" and "conduct" required to prove a claim of civil RICO. The Court has reviewed the record evidence and finds that Weaver has presented evidence establishing—or at the very least creating genuine issues of disputed fact—as to both of these elements. Specifically, Weaver has submitted evidence that Beacon, Manzo, Salcor, Patrick Griffin, Goff Group, and Southern Brokerage all worked together to file the false Acord applications with American Home, to obtain workers com-

pensation insurance at premium levels far below what they would have been if American Home had been provided with correct information; to charge and collect from Weaver higher premiums than those owed to American Home; and to profit from the difference. This evidence is sufficient to create genuine issues of disputed fact concerning whether Beacon and others worked together in a coordinated manner for the common purpose of defrauding Weaver and American Home. Beacon of course disputes these facts and argues that it did not work with Manzo, Salcor, or the others to defraud anyone.

These same factual disputes also relate to the conduct element of Weaver's civil RICO claim. Weaver has presented sufficient evidence on the question of whether Beacon, Salcor, Manzo, and the others participated directly in the operation and/or management of the alleged enterprise. Summary judgment will be Denied as to the civil RICO crossclaim.

### F. The Negligence Crossclaim

Weaver's seventh and final crossclaim against Beacon is a claim for negligence. Weaver alleges that Beacon owed Weaver a duty to act with reasonable care to ensure that Beacon was the named insured on the two worker's compensation insurance policies, and to ensure that American Home received accurate information. Weaver alleges that Beacon breached this duty, and that this breach was the proximate cause of Weaver's damages. Weaver pleads this claim in the alternative to its crossclaims for breach of contract, contractual indemnity, civil conspiracy, and civil RICO. The Parties agree that Florida law applies to this claim.

■ Beacon contends that this claim is time-barred by the four-year statute of limitations applicable to negligence claims in Florida. *See* Fla. Stat. § 95.11(3)(a).

Once again, Beacon argues that the latest this cause of action could have accrued would have been April 22, 2006, when the CSA was terminated, and thus, the limitations period would have expired on April 22, 2010. The delayed discovery doctrine does not apply to negligence actions. *Davis v. Monahan,* 832 So.2d 708, 710 (Fla.2002); *Cisko v. Diocese of Steubenville,* 123 So.3d 83, 84 (Fla. 3rd Dist.Ct. App.2013).

■ Beacon's argument is unpersuasive. As noted earlier, the doctrine of fraudulent concealment may toll the statute of limitations, and there are genuine issues of disputed fact that preclude a ruling on this doctrine at this time. *See Florida Dept. of Health and Rehab. Servs. v. S.A.P.,* 835 So.2d 1091, 1094 (Fla.2002) (applying fraudulent concealment doctrine to toll statute of limitations in a negligence action).

Accordingly, summary judgment will be Denied as to the negligence crossclaim.

### IV. Salcor's Motion for Summary Judgment

Weaver has alleged three third-party claims against Salcor: (1) a claim for common law indemnity; (2) a claim for civil conspiracy; and (3) a claim for negligence. The Parties agree that Florida law governs the common law indemnity and negligence claims, and that Michigan law governs the civil conspiracy claim.

### A. The Common Law Indemnity Third–Party Claim

With respect to the common law indemnity claim, Weaver alleges that it had a special relationship with Salcor because Salcor accepted Weaver's workers' compensation insurance premium payments, and Salcor had a duty to remit those payments to American Home. Weaver alleges

that Salcor is at fault for failing to remit the entire amount of such payments to American Home, and for comingling the payments with Beacon's funds. Lastly, Weaver alleges that to the extent it is liable to American Home on any of its claims against Weaver, such liability is solely vicarious, constructive, derivative, or technical in relation to the wrongful conduct of Salcor. (Doc. 143, ¶¶ 81–84).

Salcor argues that this claim cannot go forward because there is no evidence establishing that Salcor is liable to Weaver for any damages, or to American Home for its claims against Weaver. More specifically, Salcor contends that all of American Home's claims against Weaver are contractual or quasi-contractual in nature and arise out of the two workers' compensation insurance policies. Because Salcor is not a party to either insurance policy, it cannot be held liable for any damages assessed against Weaver and in favor of American Home. In addition Salcor contends that it cannot be held wholly liable for any of American Home's damages as Weaver has only alleged that Salcor failed to remit and/or comingled $148,578 of the premium payments, while American Home is seeking damages in the total amount of $404,013.

■ In response, Weaver points out that material issues of fact remain in dispute concerning: (1) whether and to what extent Weaver is liable for any damages to American Home; and (2) the exact amount of premium payments Salcor withheld from America Home. Because these issues remain in dispute, Weaver argues that Salcor is not entitled to summary judgment. The Court agrees. For example, if Weaver is found to be at fault, then Salcor will not be liable to indemnify Weaver. *See Houdaille Indus., Inc. v. Edwards,* 374 So.2d 490 (Fla.1979) (party seeking common law indemnification must be wholly

without fault). And, until the precise amount of allegedly withheld premium payments is determined—as well as the total amount of premium payments that remain due and owing to American Home—the Court cannot say whether Salcor would be wholly at fault for the entire amount of damages. In addition, Weaver has presented evidence that Salcor, along with Beacon, was the party responsible for failing to remit premium payments to American Home, and such evidence is sufficient to at least create a genuine issue of disputed fact as to whether Salcor is liable. *See also Auto–Owners Ins. Co. v. Ace Elec. Serv., Inc.,* 648 F.Supp.2d 1371, 1379 (M.D.Fla.2009) (concluding that "a party's liability for breach of contract [does not] preclude [ ] a finding of faultlessness" as required to bring an indemnity claim).

■ Lastly, Salcor argues that the common law indemnity claim is time barred under Florida's four-year statute of limitations. *See* Fla. Stat. § 95.11(3)(p). According to Salcor, the limitations period for this claim would have begun to run at the latest April 22, 2006, when Weaver terminated the CSA and ceased having any dealings with Salcor or Beacon. This argument fails because "it is well established that the statute of limitations does not begin to run in indemnity cases until the indemnitee has paid a judgment, or has made a voluntary payment of its legal liability to an injured party." *Scott & Jobalia Const. Co., Inc. v. Halifax Paving, Inc.,* 538 So.2d 76, 79 (Fla. 5th Dist.Ct. App.1989) (citing *Mims Crane Service, Inc. v. Insley Mfg. Corp.,* 226 So.2d 836 (Fla. 2d Dist.Ct.App.1969) and *Castle Const. Co. v. Huttig Sash & Door Co.,* 425 So.2d 573 (Fla. 2d Dist.Ct.App.1982)). No such payments have occurred in this case to date.

Summary judgment on this common law indemnity claim will be Denied.[12]

## B. The Civil Conspiracy Third–Party Claim

Weaver's civil conspiracy claim against Salcor is largely identical to Weaver's civil conspiracy crossclaim against Beacon. Salcor's arguments in favor of summary judgment are similar to those raised in Beacon's motion—namely that there is no conspiracy under Michigan's intra-corporate conspiracy doctrine because Salcor cannot conspire with its own officers (Manzo) or agents/principals (Beacon and Patrick Griffin). As the Court has previously discussed, Michigan's intra-corporate conspiracy doctrine does not bar this claim at this time. Summary judgment will therefore be Denied as to this third-party claim.

## C. The Negligence Third–Party Claim

Weaver has also alleged that Salcor acted negligently and breached its duty to Weaver when Salcor failed to remit premium payments collected from Weaver to American Home. Salcor argues that it is entitled to summary judgment because the applicable four-year statute of limitations bars this claim, and because Weaver has not presented any evidence to support a claim for negligence against Salcor.

The statute of limitations argument is identical to the argument raised by Beacon and will be denied for the same reasons. The sufficiency of the evidence argument will be denied because there is sufficient evidence to at least create a genuine issue of material fact concerning whether Salcor owed Weaver a duty of care and breached that duty causing damages. Summary

judgment as to the negligence claim will be Denied.

## V. Manzo's Motion for Summary Judgment

Weaver has asserted four third-party claims against Manzo: (1) a common law indemnity claim under Florida law; (2) a civil conspiracy claim under Michigan law; (3) a civil RICO claim; and (4) a Florida negligence claim. These third-party claims are largely identical to the claims alleged against Beacon and Salcor. As such, Manzo's motion primarily adopts and incorporates the various arguments raised in Beacon and Salcor's respective motions. For example, Manzo contends that the civil RICO, civil conspiracy, and negligence claims are barred by their respective statute of limitations. Manzo also follows Salcor's arguments concerning the common law indemnity claim, and similarly argues that Weaver has not presented sufficient evidence establishing the existence of a civil conspiracy, a violation of the RICO statute, or that Manzo owed any duties to Weaver.

To the extent Manzo's arguments mirror those raised in Beacon's and Salcor's motions, they will be denied for the same reasons. To the extent Manzo has raised new arguments, they relate solely to the sufficiency of the evidence, and as the Court has noted multiple times in this Order, there are numerous genuine issues of material fact in dispute that preclude summary judgment on these third-party claims.

Summary judgment will be Denied as to all third-party claims asserted against Manzo.

12. Because summary judgment will be denied as to the common law indemnity claim, Salcor's improper impleader argument will also be denied.

*Conclusion*

Accordingly, upon due consideration, it is hereby ORDERED as follows:

(1) Defendant Weaver's Motion for Partial Summary Judgment as to Count 1 of American Home's Amended Complaint (Doc. 165) is DENIED;

(2) Cross–Defendant Beacon's Motion to Dismiss (Doc. 144), Third–Party Defendant Salcor's Motion to Dismiss (Doc. 145), and Third–Party Defendant Manzo's Motion to Dismiss (Doc. 146) are all DENIED;

(3) Cross–Defendant Beacon's Motion for Summary Judgment (Doc. 160), Third–Party Defendant Salcor's Motion for Summary Judgment (Doc. 163), and Third–Party Defendant Manzo's Motion for Summary Judgment (Doc. 167) are all DENIED.

(4) The Motions to Dismiss Weaver's First Amended Crossclaim and Third–Party Complaint (Docs. 135, 136, 137), have been superseded by the filing of Weaver's Second Amended Crossclaim and Third–Party Complaint as well as the more recently filed motions to dismiss, and are therefore all DENIED AS MOOT.

IT IS SO ORDERED.